RECEIVED
IN ALEXANDRIA, LA.

AUG 3 1 2012

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TAURUS GREGORY,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:10-cv-1309 |
| VERSUS | |
| CORRECTIONS CORPORATION<br>OF AMERICA, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion for summary judgment (Doc. 108) filed by plaintiff. This is a civil rights complaint filed in forma pauperis by plaintiff Taurus Gregory ("Gregory") on August 9, 2010 and amended on November 24, 2010 (Doc. 19) and April 19, 2012 (Doc. 124). The remaining defendants in this case are Michael Maxwell and Joseph Tatum, both employees at the Winn Correctional Center ("WCC") in Winnfield, Louisiana. Gregory contends that, while he was confined in the WCC on November 2, 2009, Maxwell and Tatum attacked him and used excessive force against him while he was shackled. For relief, Gregory asks for monetary damages (including punitive), costs, attorney fees, and a jury trial.

Defendants answered the complaint (Doc. 98). Gregory filed a motion for summary judgment (Doc. 108) accompanied by documentary exhibits. Defendants filed an opposition to Gregory's motion with documentary evidence and affidavits (Doc. 127).

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Excessive Force

Gregory contends that, while he was confined in the WCC on November 2, 2009, Maxwell and Tatum beat him and used excessive force against him while he was shackled.

1. Law

In Hudson v. McMillian, 503 U.S.1, 112 S.Ct. 995 (1992), the Supreme Court discussed the Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986) approach to evaluation of excessive force claims, and found the extent of injury suffered by an inmate is one factor

3

that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. Hudson, 503 U.S. at 6-7, 112 S.Ct. at 999.

The Hudson court further held that, whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson, 503 U.S. at 6-7, 112 S.Ct. at 999. Also, Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

Courts considering a prisoner's claim must ask both (1) if the officials acted with a sufficiently culpable state of mind and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. The objective component of an Eighth Amendment claim is therefore contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8, 112 S.Ct. at 999. In the excessive force context, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. However, the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a

4

sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. Hudson, 503 U.S. at 9-10, 112 S.Ct. at 1000.

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent. Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton. The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. Injury and force, however, are only imperfectly correlated, and it

is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-1179 (U.S. 2010). The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Also, Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-1179 (U.S. 2010).

Therefore, Gregory must prove not only that the assault actually occurred, but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline.

## 2. Evidence

Gregory states in his motion for summary judgment, which he signed under penalty of perjury as an affidavit (Doc. 108), that Maxwell and Tatum beat him while he was in restraints.

Gregory states in his motion/affidavit that he was beaten while he was on his knees, facing the wall, his hands were cuffed behind his back, he had shackles on his ankles, and he was being compliant (Doc. 108). Gregory also admits in his motion/affidavit that, after he was placed in that position, he told Maxwell he would spit on him, in response to which Maxwell struck him with a closed fist (Doc. 108). Gregory states that his medical records show the incident occurred at 11:22 a.m. on November 2, 2009, and

he was examined thirty minutes later by Nurse J. Smith, who found a 3/4 inch hematoma to Gregory's right temporal lobe and cheek bone (Doc. 108). The medical record shows Gregory's skin was intact (Doc. 108, Ex. 1). Gregory further states that Housing Unit Manager Rials stated, in a document, that excessive force was used when Maxwell punched Gregory in the face while Gregory was restrained and compliant (Doc. 108). Gregory contends he has a permanent dent in his right temporal lobe/cheek bone where Maxwell hit him (Doc. 108).

Gregory attached several documents to his motion for summary judgment. Gregory submitted Maxwell's "Incident Statement," dated November 2, 2009 at 10:52 a.m., in which he stated that, while Gregory was on his knees and "while C/O Tatum was holding (I) Gregory he turned his head and tried to spit on me, so I shoved his shoulder to prevent [Gregory] from spitting on me and C/O Tatum." (Doc. 108, Ex. 9).

At the same date and time, Tatum filed an "Incident Statement" in which he stated that, while Gregory was on his knees and facing the wall for removal of his leg irons, "(I) became verbally abusive and attempted to spit on C/O Maxwell, and at this time C/O Maxwell pushed (I) Taurus shoulder into the wall to prevent (I) from spitting on him." (Doc. 108, Exs. 10, 12).

On November 3, 2009, Maxwell filed another incident statement, stating that, on November 2, 2009, while Gregory was on his knees,

facing the wall, and Tatum was holding Gregory against the wall while Maxwell was about to remove the leg irons, "(I) Gregory told me he would spit on my white ass. He went to clear his throat. I thought the (I) was going to spit on me so I hit the (I) in the ear area of the right side of his head and then removed the leg irons off of the (I) and got out of the cell." (Doc. 108, Ex. 11).

On November 16, 2009, Assistant Shift Supervisor Pam Horne filed an "Incident Statement" in which she stated that, on November 2, 2009 at about 10:52 a.m., Maxwell informed her he had been involved in a physical use of force with inmate Gregory and that Gregory needed to be checked by medical (Doc. 108, Ex. 13). Horne further states in her report (Doc. 108, Ex. 13), in pertinent part:

> "LPN J. Smith was present in the key area @ the time, therefore I had her review the recorded incident with me to determine the extent of force used. I observed Officer Maxwell and Correctional officer Joseph Tatum enter A1 Cell 2, escorting (I) Taurus and guide him to his knees, in order to remove the leg restraints, as he was faced against the wall. Prior to removing the leg restraints, I observed Officer Maxwell strike (I) Taurus with his right closed fist, in what appeared to be the right cheek area. The leg restraints were then removed and Officer maxwell and Tatum removed the handcuffs. I reported the incident to Housing Unit Manager James Rials and instructed Correctional Officer Eric Hall to retrieve the video camera to record the escort of (I) Taurus to the medical office in the back lobby for Medical Assessment.... (I) Taurus complied and after being checked by Medical Personnel and photographed, he was returned to his assigned cell without further incident."

Gregory was charged with defiance (Doc. 108, Exs. 2, 3 & 4). The disciplinary report states that Gregory was found "not guilty" and the charge was dismissed, on December 22, 2009, after the

disciplinary board reviewed the videotape of the incident (Doc. 108, Exs. 2 & 3).

A "CCA Facility Employee Problem Solving Notice" signed by Housing Unit Manager James Rials on November 6, 2009, states:

> "On November 2, 2009, I, Housing Unit Manager James Rials viewed a Use of Force video disk involving Officer Michael Maxwell and inmate Taurus Gregory #415850. It was apparent to the reader that Officer Maxwell used excessive force on inmate Gregory as he placed the inmate in his assigned cell. Officer Maxwell is in violation of CCA Corporate and Facility Policy Standards 3-3BB-5, which states, only use physical force in accordance with applicable policies and training. The Use of Force for punishment or reprisal is strictly prohibited."

Rials recommended that Maxwell be suspended for one day without pay (Doc. 108, Ex. 6).

Defendants submitted an affidavit by Housing Unit Manager James Rials (Doc. 127, Ex. A), in which Rials states that he investigated the November 2, 2009 incident. Rials states in his affidavit that Maxwell and Tatum escorted Gregory back to his cell, guided him to a kneeling position facing the wall of the cell so Maxwell could remove the leg irons, and Tatum held Gregory by the arms to maintain control of him (Doc. 127, Ex. A). Rials further states in his affidavit that Gregory threatened to spit on Maxwell, who was attempting to remove the leg iron restraints while in a kneeling position behind Gregory, he removed the leg irons, then stood up and struck Gregory in the facial and neck area on the right side with his right fist closed (Doc. 127, Ex. A). Rials states in his affidavit that Maxwell and Tatum left the cell and

immediately reported the incident to Assistant Shift Supervisor Horne (Doc. 127, Ex. A). Rials states in his affidavit that he determined from his investigation that Maxwell had used excessive force on Inmate Gregory and did not find any evidence the Officer Tatum was involved in using excessive force against Gregory (Doc. 127, Ex. A). Rials' Incident Report reiterates the facts set forth in his CCA Facility Employee Problem Solving Notice and his affidavit, and notes a photograph was taken of Gregory's injury (Doc. 127, Ex. A-1). Defendants also submitted Rials' CCA Facility Employee Problem Solving Notice, as described above (Doc. 127, pp. 31-34/34), and an incident statement by Rials which reflects that, at the time of the incident, Gregory was on suicide watch (Doc. 127, Ex. A, pp. 13-15/34).

Defendants attempted to submit copies of photographs of Gregory, but the copies are so poor that Gregory's face is indiscernible (Doc. 127, Ex. A, pp. 21-26/34). Therefore, the copies of the photographs cannot be considered by the court.

Defendants also submitted an incident statement by Maxwell dated November 2, 2009 at 10:32 p.m. as described above, an incident statement by Maxwell dated November 2, 2009 at 2:28 p.m., in which Maxwell stated he shoved Gregory in the shoulder to prevent Gregory from spitting on him (Doc. 127, Ex. A, pp. 10/34), an incident statement by Tatum dated November 2, 2009 at 10:58 a.m. as described above (Doc. 127, Ex. A, pp. 3-4/34), incident

10

statements by Maxwell and Tatum dated November 3, 2009, as described above (Doc. 127, Ex. A, pp. 27-28/34), the incident statement by Assistant Shift Supervisor Pam Horne dated November 16, 2009 as described above (Doc. 127, Ex. A, pp. 29-30/34), and statements by Maxwell and Tatum, dated November 2, 2009, as to Gregory having resisted being escorted to the infirmary by jerking away from them (Doc. 127, Ex. A, pp. 5-9, 11/34). Defendants also submitted Gregory's WCC medical records, as previously described (Doc. 127, Ex. A, p. 12/34, 17-20). In addition, Defendants submitted Gregory's medical record from LSU Health Sciences Center, dated November 3, 2009, which shows that Gregory had a contusion on his face; recommended treatment for pain and headache was Ibuprofen or Tylenol (Doc. 127, Ex. A, p. 16/34).

Defendants also submitted an affidavit by defendant Joseph Tatum, in which Tatum states that, on November 2, 2009, when he and Officer Maxwell escorted Gregory to his cell and placed him on his knees, facing the wall so Maxwell could remove the leg irons, Gregory threatened to spit on Maxwell and Tatum, so Maxwell stood up and struck Gregory on the right side of his face (Doc. 127, Ex. B). Tatum states that he did not know Maxwell was going to strike Gregory, and that Maxwell stepped out of Gregory's cell immediately afterward and reported the incident (Doc. 127, Ex. B).

An affidavit by Pat Thomas, a registered nurse employed as the Health Care Administrator at WCC (Doc. 127, Ex. C), shows that

Gregory's medical records reflect that he had a bony abnormality on his right cheek which he reported was from an old motor vehicle accident, for which he had undergone "facial surgery" (Doc. 127, Exs. C-1, C-2, C-3), and that he was treated for a superficial laceration to the outer corner of his right eye on January 16, 2010, caused when he fell and hit his face on his bed while he was attempting to undress (Doc. 127, Ex. C-4).

### 3. Officer Tatum

Gregory has failed to state a claim for violation of his civil rights against Tatum. In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights. <u>Reimer v. Smith</u>, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981). Also, <u>Malley v. Briggs</u>, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7 (1986). Gregory only alleges that Tatum was present when Maxwell struck him. Gregory does not allege that Tatum struck him, or that Tatum knew or should have known Maxwell would strike Gregory and failed to prevent him from doing so. Therefore, Gregory has not stated an excessive force claim against Tatum.

Since Gregory has not alleged or offered any proof of any act or omission by Tatum which constituted a violation of Gregory's civil rights, Gregory's motion for a summary judgment against Tatum

should be denied.

### 4. Officer Maxwell

As for defendant Maxwell, defendants admit in their brief that Maxwell struck Gregory and that the conclusion drawn from the WCC investigation was that Maxwell had used excessive force against Gregory in violation of the policies of Corrections Corporation of America (Doc. 127). Defendants dispute Gregory's allegations as to the extent of his injury, contending he does not have a permanent dent in his cheek as a result of having been struck (Doc. 127). Defendants contend that, on January 16, 2010, about 2 months after the incident with Officer Maxwell, Gregory fell and hit the right side of his face on his bed when he was undressing (Doc. 127). Defendants argue there are genuine issues of material fact as to the amount of force used and why it was used, which preclude a summary judgment (Doc. 127).

Since Gregory admits in his complaint that Maxwell hit him because he threatened to spit on Tatum and Maxwell, and defendants' evidence shows Maxwell hit Gregory because he threatened to spit on them and appeared to be about to do so, there is no genuine issue of material fact as to why Maxwell hit Gregory.

There is also a genuine issue of material fact as to whether the amount of force used by Maxwell was excessive. Defendants' evidence shows Maxwell violated policy in striking Gregory and that, after a WCC investigation, Maxwell was found to have used

excessive force against Gregory. Although defendants do not argue that the amount of force used was not excessive, defendants contend Maxwell hit Gregory because he thought Gregory was going to spit on them; Gregory admits he threatened to do so, and defendants' incident statements reflect that Gregory cleared his throat to do so. There is a genuine issue of material fact as to Maxwell's subjective intent, i.e., whether Maxwell hit Gregory in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Defendants also argue that Gregory's allegations as to the extent of his injury are incorrect; that Maxwell's punch did not cause a permanent dent to his cheek. Instead, defendants contend Maxwell already had a bony abnormality in his right cheek and, in addition, he fell and hit the right side of his face on his bed just two months later. Therefore, there are genuine issues of material fact as to the extent of Gregory's injury.

Resolution of the issues of Maxwell's subjective intent and the extent of Gregory's injury will resolve the ultimate issue of whether the amount of force Maxwell used against Gregory was excessive under the Eighth Amendment.

Moreover, Gregory asks for an award of punitive (as well as compensatory) damages. Punitive damages are available in section 1983 actions when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others."

Brown v. Byer, 870 F.2d 975, 982 (5th Cir. 1989), citing Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). Punitive damages may be awarded in a section 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated. Baltezore v. Concordia Parish Sheriff's Dept., 767 F.2d 202, 208 (5th Cir. 1985), cert. den., 474 U.S. 1065, 106 S.Ct. 817 (1986), and cases cited therein. Also, Ortego v. Landry, 1998-1948 (La. App. 3d Cir. 8/11/99), 746 So.2d 613. The Supreme Court discussed punitive damages in a Section 1983 case in Smith, 461 U.S. at 52, 103 S.Ct. at 1638, stating that, if the plaintiff proves sufficiently serious misconduct on the defendant's part, the question whether to award punitive damages is left to the trier of fact, which may or may not make such an award. Compensatory damages, by contrast, are mandatory; once liability is found, the trier of fact is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss. To make a punitive award, a trier of fact is required to find not only that defendant's conduct met the recklessness threshold (a question of ultimate fact), but also that his conduct merited a punitive award in addition to the compensatory award (a discretionary moral judgment). Smith, 461 U.S. at 52, 103 S.Ct. at 1638.

Therefore, there are genuine issues of material fact as to whether defendants' conduct was reckless or callously indifferent

to Gregory's constitutional rights and whether his conduct merits an award of punitive damages to Gregory. Smith, 461 U.S. at 52, 103 S.Ct. at 1638.

Since there are genuine issues of material fact, as to Maxwell's subjective intent, the extent of Gregory's injury, whether Maxwell used excessive force, and whether Gregory is entitled to compensatory and/or punitive damages, which preclude a summary judgment, Gregory's motion for summary judgment should be denied as to defendant Maxwell.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gregory's motion for summary judgment (Doc. 108) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 31st day of August 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE